Eric J. Fromme (State Bar No. 193517)
efromme@rutan.com
Caroline R. Djang (State Bar No. 216313)
cdjang@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Creditor
PACIFIC MEDICAL PLAZA, L.P.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| In re | Case No. 8:11-bk-19749-SC |
|---|---|
| RENAISSANCE SURGICAL ARTS AT NEWPORT HARBOR, LLC, | Chapter 11 |
| Debtor. | **EMERGENCY MOTION TO CONVERT THIS CHAPTER 11 CASE TO ONE UNDER CHAPTER 7, OR ALTERNATIVELY, DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE** |
| | [Local Bankr. R. 9075-1(a)] |
| | Requested Hearing Date:<br>Date: September 22, 2011<br>Time: 10:00 a.m.<br>Ctrm: 5C<br>411 W. Fourth Street<br>Santa Ana, California 92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND ITS COUNSEL, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS, AND OTHER PARTIES-IN-INTEREST:**

Pacific Medical Plaza, L.P. ("*Pacific*"), a creditor in this chapter 11 case, hereby moves (the "*Motion*"), on an emergency basis, pursuant to Local Bankruptcy Rule ("*LBR*") 9075-1(a), for an order converting the Chapter 11 case of the debtor, Renaissance Surgical Arts at Newport Harbor, LLC (the "*Debtor*") to one under

Rutan & Tucker, LLP
attorneys at law
2562/021429-0016
2335998.2 a09/21/11
-1-
EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

Chapter 7. **A hearing on 48 hours' notice or less is requested pursuant to LBR 9075-1(a).**

I. **THIS CASE SHOULD BE CONVERTED BECAUSE OF THE DEBTOR'S MATERIAL MISREPRESENTATIONS AS TO ITS FINANCES.**

The immediate conversion of this case to one under chapter 7 is in the best interest of creditors and the estate because, based on recent disclosures that have come to light in this case, it is clear that the Debtor's CEO, Developer, Manager and Chairperson of the Board of Managers, Bruce Wallace, has made material misrepresentations to the Court under penalty of perjury, and to its Chief Restructuring Officer and Financial Advisor, XRoads Solutions Group, LLC ("*XRoads*"), resulting in the resignation of XRoads and the pending resignation of Debtor's counsel, South Bay Law Firm.

It has been revealed that Mr. Wallace has committed numerous violations of his fiduciary duties to creditors and the bankruptcy estate. Mr. Wallace's violations include, among other things, misrepresentations to the Court in the form of blatant falsehoods in a declaration made under penalty of perjury and failure to provide accurate financial information. Mr. Wallace submitted under penalty of perjury the First Interim Budget that was withdrawn by the Debtor as admittedly unrealistic, unreliable and unachievable. Mr. Wallace then spent several weeks preparing the Second Interim Budget, which has been revealed to the Court and all parties to be based on falsehoods and, as a result, is unsupportable and unreliable. These revelations alone are sufficient cause to immediately convert this case to one under chapter 7.

Further cause to convert exists because Mr. Wallace's mismanagement has caused substantial and continuing loss to the estate. The Debtor continues to fail to pay its post-petition obligations as they come due while continuing to generate financial losses. Rehabilitation is unlikely because the Debtor is operating with a negative cash flow and continues to incur post-petition expenses. Therefore, ample cause exists to convert this case to one under chapter 7. Conversion, rather than dismissal, is in the

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-2-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

best interests of the creditors because the Debtor has negative cash flow and continues to incur substantial post-petition operating expenses which diminish the estate. Furthermore, it is believed that the Debtor has conducted very few surgeries at the center despite Mr. Wallace's hopeful, or fraudulent, assertions of many surgeries being, and to be, conducted.

Furthermore, the recent disclosures also make clear that the Debtor's financial records are in disarray and to a large extent non-existent. This raises the concern that the Debtor's patient records may also be in the same dire state. The state of record-keeping at the Debtor significantly jeopardizes the ability to preserve the value of the Debtor, to collect assets, to pay creditors, and to ensure the safety of patients.

In sum, within the first eight weeks of this case it has been revealed that:

- The First Interim Budget submitted by Mr. Wallace was withdrawn as unachievable because the collectability of the outstanding accounts receivable was put in serious question.
- Mr. Wallace prepared and submitted the Second Interim Budget under penalty of perjury based on material inaccuracies and falsehoods.
- Mr. Wallace represented to the Court under oath that the Debtor had contracts with Blue Cross and Blue Shield that it did not have.
- Mr. Wallace based the Case Load Forecast, a fundamental component of the Second Interim Budget, on material misrepresentations.
- The Debtor's financial records are in disarray, incomplete and in some instances non-existent.
- The Debtor's proposed financial advisor is resigning after Mr. Wallace's misrepresentations have come to light.
- The Debtor's proposed bankruptcy counsel is seeking to withdraw after revelation of Mr. Wallace's misrepresentations.

Accordingly, there is ample cause to convert this case to one under chapter 7 without delay.

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-3-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

The Motion is based upon these moving papers, the Memorandum of Points and Authorities, and all other pleadings, papers, and records on file with the Court in the Debtor's case, and such additional evidence and arguments as may be properly presented to the Court at or before the hearing on the Motion.

II. **RELEVANT FACTUAL BACKGROUND**

On July 11, 2011, an involuntary petition was filed against the Debtor by petitioning creditors, Dr. Gary Reiter, Vascular Resources Inc., and Anthony C. Pings, each of whom is a long-time business partner of Mr. Wallace and, in the case of Dr. Reiter and Vascular Resources, Inc., co-judgment creditors. On July 25, 2011, the Debtor consented to the entry of an order for relief, and the order for relief was entered on August 2, 2011 [Doc. No. 15] (the "***Order for Relief***").

Pacific is the owner of the non-residential real property located at 1640 Newport Boulevard, Costa Mesa, California, and the lessor of the Debtor's business premises, located at 1640 Newport Boulevard, Suites 100, 260 and 310, Costa Mesa, California (the "***Premises***") pursuant to two commercial leases (the "***Leases***"). Pacific filed motions for relief from stay (unlawful detainer) with respect to the Premises on August 2, 2011. Since the entry of the Order for Relief, the Debtor has failed to make any required payments to Pacific under the Leases for post-petition use and possession of the Premises. Debtor proposed to pay Pacific more than 60 days after the order for relief was entered, contravening the plain language of 11 U.S.C. § 365(d)(3), and then withdrew that proposal because the Debtor's proposed cash collateral budget was unrealistic and unachievable.

On September 15, 2011, Debtor filed the Proposed Second Interim Cash Collateral Budget and Supporting Affidavits Submitted in Further Support of (or in Amendment to): (1) Debtor's Emergency Motion for Order Authorizing Use of Cash Collateral and Setting Interim and Final Hearings Re: Same [Docket Entry No. 24], etc. (the "***Second Interim Budget***").[1] Attached to the Second Interim Budget were the

---

[1] Each of the First Interim Budget and the Second Interim Budget failed to disclose that the Debtor is

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

-4-

Declarations of Bruce Wallace ("*Wallace Decl.*") and Dennis Simons ("*Simons Decl.*"), founder and Managing Principal of XRoads. In his declaration, Wallace states, in connection with his preparation of the forecasts in the budget, "I updated caseload estimates based on projected HMO caseloads based on recent insurance contracts I have negotiated. Amongst those contracts are recently-signed contracts with Blue Cross/Blue Shield." (Second Interim Budget, at Wallace Decl., ¶ 4.) Mr. Simons similarly declared, "Mr. Wallace either directly or indirectly supervised the production of forecasts of caseloads, and concurrent financial impacts, for future revenue and cash flows from newly signed contracts with Blue Cross and Blue Shield, again using forecasts from doctors as his base line." (Second Interim Budget, at Simons Decl., ¶ 5).

On September 19, 2011, Mr. Simons filed a Supplemental Declaration Re Debtor's Proposed Second Amended Cash Collateral Budget [Doc. No. 131] (the "*Supplemental Simons Declaration*"). In the Supplemental Simons Decl., Mr. Simons reveals:

> My prior declaration states at page 9, lines 15-16, Debtor has '[n]ewly signed contracts with Blue Cross and Blue Shield . . .' This information was provided to me by Bruce Wallace. Since the submission of the Prior Declaration, I have learned that Debtor does not have signed contracts with Blue Cross and Blue Shield. Instead, I am now advised that Debtor is in the process of negotiating contracts with Blue Cross and Blue Shield, and Debtor believes that (a) the Blue Cross contract will be executed and operative no later than October 1, 2011 and (b) any Blue Shield contract will not be effective before November 1, 2011. I have no independent knowledge as to whether such contracts will be executed and operative by either date.

(Supplemental Simons Decl. at ¶ 2.)

Mr. Simons further clarifies that:

> A material component of the Second Interim Cash Collateral Budget to which the Prior Declaration relates is the Case Load Forecast described at page 9, ¶'s 5 and 6. The Case Load Forecast is basically a forecast of future medical procedures to be performed by doctors at Debtor's facilities. As set forth in the Prior Declaration, the Case Load Forecast was produced and generated by Bruce Wallace and his staff. Since the submission of the Prior Declaration, I have learned that in at least one instance, **the data used to create the Case Load Forecast is materially incorrect, and overstates the case load projections.** As of the date of

---

subleasing Suite 310 on the premises and has failed to disclose that lease income or to tender that income to Pacific the lessor of Suite 310.

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

-5-

this declaration, XRoads is unable to test any of the other data used by Mr. Wallace and his staff in creating the Case Load Forecast.

(*Id.* at ¶ 3) (emphasis added.)

Moreover, Mr. Simons states that "Debtor has no financial statements for the months of June and July 2011 and further, the records which were provided to XRoads for the preceding months appear incomplete." (*Id.* at ¶ 4.) According to the Supplemental Simons Decl., XRoads will resign as Financial Advisor and Chief Restructuring Officer in this case, effective as of September 26, 2011. (*Id.* at ¶ 5.)

Also on September 19, 2011, the Debtor's proposed counsel filed a Motion to Withdraw as counsel for unstated internal conflicts. [Docket No. 132.] As a result, the Debtor is faced with the predicament of not having a financial advisor nor bankruptcy counsel.

### III. CAUSE EXISTS TO CONVERT THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7

Section 1112(b)(1) of the Bankruptcy Code mandates that the court convert a chapter 11 case to one under chapter 7 or dismiss it (whichever is in the best interests of the creditors) when the United States Trustee, or other party in interest demonstrates that cause exists. Once cause is demonstrated, the burden shifts to the debtor to specifically identify "unusual circumstances" which would prevent the court from fulfilling its mandate to convert or dismiss the case. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa 2007); *In re Miell*, 419 B.R. 357, 368 (Bankr. N.D. Iowa 2009) (holding that once "the moving parties have established "cause" to convert the case under [Section] 1112(b)(1), the objecting parties . . . assume the burden to establish "unusual circumstances" which weigh against conversion"). That section provides:

> on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate, **the court shall**

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-6-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

> convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, **if the movant establishes cause**.

11 U.S.C. § 1112(b)(1) (emphasis added). The Bankruptcy Code further provides a non-exclusive, illustrative list of sixteen examples of "cause." 11 U.S.C. § 1112(b)(4); *In re Gateway Access Solutions, Inc., supra*, 374 B.R. 556, 560. The following grounds to convert for cause are identified in the Code and are applicable here:

    a)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and

    b)    gross mismanagement of the estate;

11 U.S.C. § 1112(b)(4) (A) and (B). The Court is not limited to the grounds for cause illustrated and should "consider other factors as they arise." *In re Gateway Access Solutions, Inc., supra*, 374 B.R. 556, 561 (citing *In re Brown,* 951 F.2d 564, 572 (3rd Cir. 1991)).

    A.    **The Debtor Continues to Lose Money, Is Not Paying its Basic Operating Expenses and Has No Likelihood of Rehabilitating Its Business.**

Cause for conversion exists if there is substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. 1112(b)(4)(B). The court's inquiry into cause on this ground is twofold: (1) is the debtor suffering losses or making gains; and (2) is rehabilitation likely. *In re Gateway Access Solutions, Inc., supra*, 374 B.R. 556, 562. A debtor's genuine desire for the company to succeed will not save it from conversion for cause if cause is established. *Id.* (citing *Tennessee Publishing Co. v. American Nat'l Bank*, (1936) 299 U.S. 18, 22) ("However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation.")

Courts look to the respective amount of assets and liabilities of a company to

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-7-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

determine whether there are continuing losses to the estate. *See In re Gateway Access Solutions, Inc.*, *supra*, 374 B.R. 556, 560; *see also In re Emergystat of Sulligent, Inc.*, 2008 Bankr. LEXIS 566 (Bankr. E.D. Tenn. 2008) (noting that rehabilitation was unlikely where the debtor's debts were substantially greater than the debtor's assets). In *Gateway*, the court found an absence of likelihood of rehabilitation when the debtor's operating reports reflected a downward trend, the debtor-in-possession's plans for reorganization were based on "optimistic hypothetical projections of undocumented future deals," and the sole operating income was the value of assets which debtor "hoped" to sell. *Id.* at 562-563.

Here, the Debtor has demonstrated that it cannot generate sufficient cash to pay its post-petition obligations by its failure to pay Pacific and its admission it has insufficient cash to pay Pacific. It is undisputed that the Debtor's cash position is poor and insufficient to pay its outstanding post-petition obligations. The Debtor admitted to the Court and all parties in interest that its first interim budget was unrealistic and unachievable. The Debtor then spent weeks to prepare and submit the Second Interim Budget. As is now clear, the Debtor's projections in the Second Interim Budget are materially inaccurate and not supported. (*See* Supplemental Simons Decl.) Even with the inflated projections, the Debtor shows negative cash flow for each of the weeks in which the Debtor pays rent, *i.e.* five of the thirteen weeks covered by the Second Interim Budget. Moreover, the Debtor attempts to re-write the terms of the lease for Suites 100 and 260, which requires quarterly lease payments (not monthly), and the Bankruptcy Code, which requires prompt payment of lease obligations that cannot be extended beyond the 60th day after the order for relief is entered.

Furthermore, the Debtor has presented no evidence to demonstrate that it will generate significantly more cash from future operations such that it could pay post-petition obligations or fund a restructuring plan. Pacific is informed that very few, if any, surgeries occur on any given day; and many days there are none. The Debtor has also produced no evidence of its ability to obtain post-petition financing to fund its

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-8-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

1  operations in this case. The Debtor's principals have not offered any post petition loans
2  or capital contributions, nor have they demonstrated the financial wherewithal to do so.
3  In fact, the Debtor has already obtained significant amounts of prepetition loans and
4  loan guarantees from Pacific, business associates of Pacific, and doctors, and has had its
5  latest attempts to raise money from doctors rebuffed.
6      With regard to continuing losses, the second prong for a finding of cause
7  pursuant to section 1112(b)(4)(A), courts "look to both financial prospects of the
8  Debtor and the financial records filed with the court." *In re Gateway Access Solutions,*
9  *Inc., supra,* 374 B.R. 556, 564. The *Gateway* court found that debtor's track record
10 suggested a pattern of declining assets and noted that "[n]egative cash flow and an
11 inability to pay current expenses as they come due can satisfy continuing loss or
12 diminution of the estate standard for purposes of § 1112(b)." *Id.* (citing *In re Motel*
13 *Properties, Inc.,* 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003)). Looking at the debtor's
14 monthly reports, the Gateway court was concerned that the cash balance went from
15 $272,649.06 to only $11,870.00 in just five months and that the debtor had made loans
16 and borrowed money post-petition. Because the estate was diminishing rapidly at the
17 expense of creditors, the court found that there was substantial and continuing
18 diminution. *In re Gateway Access Solutions, Inc., supra,* 374 B.R. 556, 564.
19     As in *Gateway,* the Debtor's cash balance (which is inflated), fluctuates wildly,
20 for example, from $356,167 for Week 6, to $8,822 for Week 8. Debtor projects
21 operating with negative cash flow for Week 3, Week 7, Week 8, Week 11 and Week
22 12. Week 7 reflects negative net cash flow of <$320,034>. Moreover, the Second
23 Interim Budget reflects two "Member DIP Loans" in the amount of $25,000 each,
24 which will increase the Debtor's liabilities. Because this inability to pay even the most
25 basic operating expenses is considered a substantial and continuing loss and because no
26 likely rehabilitation of the estate exists, cause exists to and the court must convert or
27 dismiss this case.
28

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

-9-

Case 8:11-bk-19749-SC   Doc 137   Filed 09/21/11   Entered 09/21/11 11:16:09   Desc
Main Document    Page 10 of 16

B.  **Mr. Wallace's Failures to Comply with the Bankruptcy Code and Misrepresentations Under Penalty of Perjury Equate to Gross Mismanagement.**

"Gross mismanagement alone is sufficient grounds for conversion from Chapter 11 to Chapter 7." *In re Gateway Access Solutions, Inc., supra,* 374 B.R. 556, 566. A debtor in possession of a chapter 11 estate is a fiduciary for the estate and its creditors. *In re Eddy,* 304 B.R. 591, 599 (Bankr. D. Mass 2004). Breach of a debtor's fiduciary duties to an estate and its creditors equates to gross mismanagement. *See In re Gateway Access Solutions, Inc., supra,* 374 B.R. 556, 565 ("accurate reporting and financial transparency are important requirements in the management of a debtor-in-possession.") Many of a debtor-in-possession's duties are set forth in the Bankruptcy Code; breach of any one or combination of these duties can be considered gross mismanagement for purposes of establishing cause for conversion to a case under chapter 7. *See In re Wallace,* 2010 Bankr. LEXIS 261, 15 (Bankr. Idaho 2010) ("The debtor in possession must perform not only the functions and duties of a chapter 11 trustee, as specified in 1106(a), but also the duties set forth in Bankruptcy Code chapters 3 and 5, and the Federal Rules of Bankruptcy, which are applicable to chapter 11 cases.")

Here, the Debtor has failed to comply with statutorily prescribed duties. A debtor-in-possession has a duty to pay post-petition operating expenses such as employee salaries and professional fees. 11 U.S.C. 1112(b)(4)(A). These expenses have unsecured administrative priority and thus, if unpaid, can result in administrative priority claims which necessarily diminish recovery for unsecured creditors. 1 Fitzgerald, Gonzalez & Walrath, RUTTER GUIDE: BANKRUPTCY § 11:301, p. 1414 (Rutter Group 2010).

As set forth above, the Debtor has not paid Pacific rent or any other amounts due under the Leases for the months of July, August or September 2011. These expenses will have priority over other pre-petition unsecured creditors of the estate. Failure to

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-10-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

pay these post-petition expenses is another ground to find mismanagement of the estate and therefore cause for conversion exists.

Significantly, Mr. Wallace has made misrepresentations to the Court under penalty of perjury, relating specifically to the Debtor's financial condition. A debtor-in-possession is required to provide full and accurate financial information. *See In re Nugelt, Inc.*, 142 B.R. 661, 669 (Bankr. D. Del. 1992). First, Mr. Wallace submitted the First Interim Budget, which was admitted by the Debtor and proven to be inaccurate, unrealistic and unachievable. Specifically, the First Interim Budget was based on the collection of outstanding accounts receivable for which the Debtor's records may not exist, or at least are in disarray, and the collectability was and remains questionable. Mr. Wallace then spent weeks to prepare the Second Interim Budget in which he misrepresented to the Court and to XRoads that he had based his projections on his "recently signed" contracts with Blue Cross and Blue Shield. As evidenced by the Supplemental Simons Decl., Mr. Wallace's statement was untrue, and it is unknown whether such contracts will be entered into in the future. It is also unclear as to how the lack of contracts with Blue Shield and Blue Cross will impact the Debtor's projections. Undoubtedly, however, the Debtor's already poor cash flow would decrease. Most importantly, Mr. Wallace's misrepresentations to the Court under penalty of perjury are extremely dire, as Mr. Wallace is required to act as a fiduciary for creditors of the estate. For this reason, it is imperative that conversion of this case or the appointment of a trustee be ordered by this Court *immediately*.

## IV. APPOINTMENT OF A CHAPTER 11 TRUSTEE IS ALSO WARRANTED AS AN ALTERNATIVE TO CONVERSION.

Section 1104 of the Bankruptcy Code empowers the court to direct the United States Trustee to appoint a trustee in a chapter 11 case. Section 1104(a) provides, in part, that the court shall order the appointment of a trustee, for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the debtor's affairs either before or after the commencement of the case. 11 U.S.C. § 1104(a)(1). Additionally, the

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-11-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

1  Court may order the appointment of a chapter 11 trustee if grounds exist to dismiss or
2  convert a case under 11 U.S.C. § 1112, but where the court determines that appointment
3  of a trustee is in the best interests of creditors and the estate. 11 U.S.C. § 1104(a)(3).
4      As described above, several grounds for conversion for cause exist and the Court
5  should convert this case. If the court is not so inclined, then at the very least, the Court
6  should appoint a chapter 11 trustee to protect creditors of the estate and report to the
7  Court as to whether this case should be converted to one under chapter 7.

## V. THE COURT CAN CONVERT THE CASE OR APPOINT A TRUSTEE *SUA SPONTE*

The Court has the power *sua sponte* to convert a Chapter 11 case to Chapter 7 for cause. (*See In re Gale*, 8 B.R. 960, 963-964 (Bankr. D. Md. 1981) (*sua sponte* conversion to Chapter 7 ordered after court denied confirmation of plan); *Matter of Rementer*, 58 B.R. 723, 724-725 (Bankr. D. Del. 1986) (court ordered case reconverted to Chapter 7 after denying trustee's motion to dismiss as being in best interests of estate and creditors). Likewise, the Court can appoint a trustee *sua sponte*: "The statute plainly gives the bankruptcy judge authority to appoint a trustee *sua sponte*. A trustee may be appointed "on request of a party in interest or the United States trustee." 11 U.S.C. § 1104(a). The provision entitling a United States trustee or party to make such a request does not preclude the court from doing so *sua sponte*. *Fukutomi v. United States Trustee (In re Bibo, Inc.)*, 76 F.3d 256 (9th Cir. 1996). Based on the foregoing, the Court is permitted to order conversion or appointment of a trustee *sua sponte*.

///
///
///
///
///
///
///

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

-12-

VI. **CONCLUSION**

For the foregoing reasons, Pacific respectfully requests that the Court *immediately* convert this case into one under chapter 7, or in the alternative, appoint a chapter 11 trustee.

Dated: September 21, 2011

RUTAN & TUCKER, LLP
ERIC J. FROMME
CAROLINE R. DJANG

By:  /s/ Eric J. Fromme
Eric J. Fromme
Attorneys for Creditor
PACIFIC MEDICAL PLAZA, L.P.

Rutan & Tucker, LLP
attorneys at law

2562/021429-0016
2335998.2 a09/21/11

-13-

EMERGENCY MOTION TO CONVERT
CASE FROM CHAPTER 11 TO CHAPTER 7

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
611 Anton Blvd., Suite 1400, Costa Mesa, CA 92626

A true and correct copy of the foregoing document described as **EMERGENCY MOTION TO CONVERT THIS CHAPTER 11 CASE TO ONE UNDER CHAPTER 7, OR ALTERNATIVELY, DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 21, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On September 21, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 21, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
 Hon. Scott Clarkson – Courtesy Copy – 411 W. Fourth Street, Room 5097, Santa Ana, CA 92701
 **(Via Personal Delivery)**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signature
/s/ Amie Tancas

Date September 21, 2011    Type Name  Amie Tancas

| This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California. |
|---|
| August 2010                                                                                                F 9013-3.1.PROOF.SERVICE |

**SERVICE LIST**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Steven Casselberry: scasselberry@mrllp.com, fbaig©mrllp.comjjacobs@rnrilp.corn
- Caroline Djang: cdjang@rutan.com
- Mark S Faulkner: mfaulkner@mrllp.com, fbaig@mrIlp.comjjacobs@mrlip.corn
- Robert P Goe: kmurphy©goeforlaw.com, rgoe@goeforlaw.com; mforsythe©goeforlaw,com
- Michael D Good: mgood@southbaylawfirm.com
- Michael J Hauser: michael,hauser©usdoj.gov
- Thomas E Shuck: malvarado@pmcos,com, malvarado@pmcos,com
- United States Trustee (SA): ustpregionl6.sa.ecf@usdoj.gov
- William J Wall: wwall©wall-law.com, goceguera@wall-law.com

**ALL TO BE SERVED VIA U.S. MAIL**

| | |
|---|---|
| Vascular Resources Inc.<br>do Robert P. Goe, Esq.<br>Goe & Forsythe, LLP<br>18101 Von Karman Ave, Ste. 510<br>Irvine CA 92612 | McKesson Corporation<br>2800 E. Philadelphia St.<br>Ontario CA 91761 |
| Gary Savlov<br>c/o Robert P. Goe, Esq.<br>Goe & Forsythe, LLP<br>18101 Von Karman Ave, Ste. 510<br>Irvine CA 92612 | J&J Health Care Systems, Inc.<br>PO Box 60000<br>San Francisco CA 94160 |
| Kendrick, Jackson & Kearl<br>2603 Main Street, Suite 700<br>Irvine CA 92614 | Control Air Conditioning<br>5200 La Palma Ave.<br>Anaheim, CA 92807 |
| Tandem Receivable Solutions<br>P.O. Box 7362<br>Woodland Park, CO 80863 | Trumpf Group<br>415 Jessen Lane<br>Charleston SC 29482 |
| Bard Peripheral Vascular, Inc.<br>1415 W. 3d Street Ste. 109<br>Tempe AZ 85281 | WoltersKluwer – ProVation Medical<br>800 Washington Ave. N. Ste. 400<br>Minneapolis MN 55401 |
| Quiring Construction<br>5118 E. Clinton Way Ste. 201<br>Fresno CA 93727 | Steris Corp.<br>5960 Heisley Road<br>Mentor OH 44060-1834 |
| Fresno Plumbing<br>2585 N. Larkin Ave.<br>Fresno CA 9372 | Architectural Wood<br>5672 E. Dayton Ave.<br>Fresno CA 93727 |
| Rumex<br>13770 58th ST North Suite 317<br>Clearwater, FL 33760 | Zeiss<br>5160 Hacienda Dr<br>Dublin, CA 94568. |
| Bausch & Lomb<br>26970 Aliso Viejo Parkway Suite 100<br>Aliso Viejo, CA 92656 | Jani-King of California, Inc.<br>500 N State College Blvd Suite 900<br>Orange, CA 92868 |

2532/027423-0005
2295215.1 a08/24/11

| | | |
|---|---|---|
| 1 | Boston Scientific. | Allergan Sales Inc. |
| 2 | One Boston Scientific Place | PO Box 19534 |
| 3 | Natick, MA 07160 | Irvine, CA 92623 |

2532/027423-0005
2295215.1 a08/24/11